182292 United States v. Todd Faust Mr. Jacobson, good morning My name is Miles Jacobson and I am representing Todd Faust. There are two issues that I appreciate being able to address in particular. One of them is the Johnson 2 issues and what that circuit issues. And to begin with, so Johnson 2 was decided on the same day that we filed our brief and we just sent a letter to that effect. But given Johnson 2 and Johnson 1 and the camps, I submit that there is no restriction on law of the circuit by being bound by prior panels. That is to say, we know that the residual clause no longer applies. The prior panels look at residual clause sometimes alone, as in Dancy, sometimes together with another case in which case there's an issue about what's dicta here, what's the real issue. And under the camps, the court is instructed to look at the elements of the statute, just at the statute. And so here we are, I think, fresh on looking at the underlying issues in my case, which have to do with assault and battery on a public official, which is the title of the statute, that issue, and resisting arrest. And this is an ACCA case in my situation. So the camps has a very important phrase, perhaps the holding, in which the camps says, the United States Supreme Court says, Congress intended ACC to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none. So it's no longer a question of what's likely to be the case. It's no longer a question of what's typically the case. It's a question of all cases or none. And I submit that requires us to find that these are not ACC predicates. And with respect, Your Honor, Judge Barron, if I may, I don't think that the instructions to the jury are the place to determine this. And one reason for that is, as in my case, there was no jury. There were no instructions to the jury. It's very typical for a person to plead guilty based with the accusation, in which case the judge reads some, asks the prosecutor to read some facts. This is what happened. Counsel, defense counsel, did you tell your client what the elements of the offense are? Yes, I did. And what the consequences? Yes, I did. But that just begs the question of what the elements were. I mean, it's got to be the case that you don't have to look at jury instructions in a case in which there's no jury decision. But the reason that jury instructions might matter is they might give us insight into what the elements are. Not if there are alternative jury instructions. Not if in some cases judges instruct A, and in some cases they instruct B. Well, what do we draw from that? That means it is an element or it isn't? That means the test is not based on the statute. That is, the camps does not allow us to determine it based on alternative possible jury instructions. Because what the elements are is in the alternative. For example, in Maloff, excuse me, I put on my wrong glasses and I can't see at all. Well, let me turn to 265.13d, public, felon battery and public employee and performance of his duties. Commonwealth versus Cologne, which is cited in the brief on page 22. The Commonwealth may need its burden by proving harmful battery, reckless battery, or offensive battery. Okay. Those are the choices. So here I am, I'm the defendant, I'm charged with something. I get up. Do you hear the elements of the crime? Yes, it's A, B, C, or D. Or A, B, or C in this case. I plead guilty. We are not allowed to go figure out anything more than that. Well, no, but the question is if the charging document said, or if the plea agreement said, I plead guilty to harmful battery. No, Your Honor. What do you mean no? There's no, first of all, no plea agreement. The person is charged with a crime. It doesn't say charged with harmful battery. Well, I guess I'm just asking is even if it did, you might win. That's why I'm asking these questions, not because if it did, you'd lose. The issue is if it's not a separate element, then it doesn't matter if it might be misunderstood to have been a separate element. And so what I'm trying to figure out is, is it or is it not under Massachusetts law a separate element with respect to the nature of the touching? And is there a case that helps me figure that out? You know, I understand that the question sounds like it ought to be clear that there ought to be either, yes, it's a separate element or not a separate element, but I'm not, I'm having trouble with it for this reason. Let's say we had a case that went to a jury. And the jury's instructed, ladies and gentlemen of the jury, you must find as an element of the crime X. Now it's an element. It is now an element of that crime. And that person could not have been properly found guilty unless there was sufficient evidence to have proved that element. But let's say that wasn't the instruction. Let's say that instruction wasn't required. Let's say there's sometimes other instructions. For example, an instruction about a harmful battery or a reckless battery or an offensive battery, as the case may be. But see, this is what I'm trying to figure out. Imagine the circumstance you just said in which the jury was instructed only as to harmful battery. Only. Harmful touching. Not offensive touching. You're saying that never happens? No, I'm not saying that never happens. Okay, so if that happened and the jury then convicted, that might not be an overbroad crime for which they were convicted. You see? So that's what I'm just trying to understand. How does this actually work with respect to? I think it, sorry for interrupting. No, go ahead. I think it works in different ways in different situations. And I think that's the very thing that the camp is trying to say. So then your position would be we'd remand for them to scrutinize and figure that out? No. Well, why not? That's what I... My position is when a person pleads guilty, which happens to be my case, that the charging documents don't say one of these three. I see. You say, in fact, they just don't. Yes. Okay. Here. Here. Okay. Got it. So, under the camp, first of all, given the level of force that we now know is necessary under Johnson 1, which is that it has to be force capable of causing physical pain or injury, that's just not an offensive battery. That's something, so you might need an offensive battery for certain kinds of elements, but that doesn't qualify that offensive battery by itself under Johnson 1. We don't have the Shepard documents. Do we have the Shepard documents in front of us here? No. So we have to remand them. It's just that the instructions on remand would be that if the charging documents don't specify, as you're saying they won't, what type of ABPO was involved, then it would be overbrought. Is that right? No. They do specify. When you say what type, we're talking about the different possibilities. No, no. I don't mean with respect to what nature of the officer. I mean with respect to the type of touching. I don't believe that they do. But we can't know that from this record, right? I don't think it matters, Your Honor. That's why I'm saying to you that I don't think you should remand. Because in some, the question isn't whether in this particular case. The question is this. Under this particular statute, is it always one way or not? That's what the camp says. Under the particular statute, it always, it's either, that's a non-off switch. It's not like you look at the particulars of the crime first, or the elements of that crime as it was developed first. Well, that would be true even in a divisible statute on your theory. No. In a divisible statute, you would, you are, you look and see that it's divisible. So that's what we're trying to. This is not a divisible statute. You're saying only look at the face of the statute to figure out whether it's divisible? Yes. Well, but the camp, okay. The camp doesn't say that. In a footnote two of the camp, she specifically doesn't address how are we supposed to figure out what the elements are. And she reserves on the question of whether, the court reserves on the question of whether state law precedent might determine for us whether it's divisible or not. Whether it's divisible means whether, whether different kinds of crimes are considered. Not whether there are different ways of proving that crime. Not whether there are different aspects of that crime. Not whether, but whether, whether there are different elements, crimes. Whether it actually encompasses a different crime. Some statutes are very clear that they encompass a different crime. Crime A is punishable. Crime B is punishable. That's what I think the camp is talking about. In any event, if I may, I'll move on to this other issue. The other issue I'd like to address, which is the Miranda issue in this case. Whether Miranda was effective. What we typically understand is that under Miranda, once there's a good Miranda warning, that we don't look further to determine whether it was voluntary. Unless there's some other facts that suggest it was coerced. But under cases like Siebert, we understand that depending upon the prior experience of the person who's being interrogated with the officers, that it may be that it undermines Miranda. And the person really no longer has a free choice in the way Miranda is meant to be. And I submit that's what happened in this case. And that Judge Ponser got it wrong with respect to Judge Ponser. He found the following. Once the officers secured him, Mr. Faust, Faust said, I have a lot of children, I can't go to jail, basically I want to cooperate. Once that happened, the facts, Faust never testified. There are four officers that testified. It's clear that that's not what they say. You're challenging his findings of fact. Do I understand you correctly? You're challenging... I'm saying that they're plainly wrong. That his findings of fact are plainly wrong. Tell us how that comes about. There are four officers who questioned the defendant while he was at the scene. The police officers come up to the fifth floor, they see him, he drops a backpack that he's carrying, he runs, he's held by other officers, he's handcuffed, he's sat down. Now four officers approach him. This is before he's brought to the station and given his Miranda rights. Ultimately, he's brought to the station and given his Miranda rights by a special agent, Meehan, who's the person who administers the Miranda rights, and this will become significant in a minute, and then participates in the interrogation. Scott Richard says he's the first officer to testify at the hearing, and he comes and he says, I open up the door, I saw him, Faust ran, and then he says, Faust said he wanted to cooperate, but in the rest of his testimony, you have to read all of his testimony, he says, that didn't happen right away, he says. I left for five or ten minutes, right after he was held. So then he comes back, and he comes back and he sees that Mr. Faust is there and he's being shown information about the fact that guns matched the serial numbers of guns that were stolen, and now he's in trouble. Now he says, I want to cooperate. Now what happens during that five or ten minutes? Well, we find out. Officer McNally, who was there the entire time. Excuse me. Excuse me. Had he said that he wanted to cooperate when he was immediately caught about to leave? No. Absolutely not. He said nothing at that point? Nothing. According to your version? No. According to the transcript. This is not a matter of... Well, that's your version, isn't it? It's black and white, Your Honor. So it's my recollection of the transcript. I'm trying to report accurately what that transcript says. Okay. I'm not interpreting something that I read in the transcript. It's still your version, apparently. It's my version that I'm standing here talking to you, too. Right. Officer McNally testifies that he never left Faust's side. That he was the person who snapped on the handcuffs. He never left his side. And then later on, he saw other officers initiate a conversation. It doesn't say what that conversation was. Michael Dion testifies. And he says, I went up to Mr. Faust. I told him it was important to locate other weapons. I told him that we had identified the weapon in the bag as one of the weapons stolen. I wanted to... It was really important to find other weapons. And I wanted to hear his side of the story if he wanted to tell me. Faust, at that point, says, I have children. That's the point that he begins to do it. And then Brian Meehan comes along. And Brian Meehan, who knows that... Faust has already said this. Brian Meehan says something very interesting. He says, I want to know whether you'll cooperate, whether you'll talk when we get down to the station. Whether you'll talk to me. No more random warnings have been given. Now this officer, who already knows what's happened so far, is confirming, is putting the nails in this particular coffin that this person's going to cooperate if he's brought down. And I asked Officer Meehan on the witness stand, is this your usual practice? Yes. It's my usual practice. I don't want to bring someone down and find that they don't want to talk to me. So you're saying that's the key comment that brings it within the concurrence in Siebert? That's the intentional two-step aspect of it. If we disagreed with you on that, can you still win? Yes. It doesn't have to be that Justice Kennedy's version is correct. If we said one way or the other whether you're right about that? I think not. So we'd have to say Justice Kennedy's concurrence does not control for you to win if we don't agree with you on the cooperator point, the cooperation point. I think that you would have to find that basically the thrust of the Siebert argument is that there's an intentional process of questioning this person, which there absolutely was to try to get information about other guns, and that although they didn't get him. And then what happens next, by the way, is Faust then says, and I'll show you where some of those guns might be. And they take him on a trip showing him where these guns might be. And that trip that they take him on never makes it into a police record. Kind of interesting. They then bring him to the station. And it's then Special Agent Meehan, who is the person to confirm that Faust would testify, that Faust would cooperate if brought down, that Faust was willing to talk, that he then reasons around the rights. And I submit, Your Honor, that under those circumstances, that's not what we mean by Miranda warnings. That's not giving the person a fair chance. I would like to ask you, and that is, are you saying that asking a prospective defendant, will you cooperate with me when we get to the station, what was the answer he gave? He indicated that he would. And is that incriminating? You mean incriminating as to the police officer? No, incriminating as to the eventual charges. Just saying that I will cooperate with you? Judge, you know, I see your point in that. I'm not sure what the answer is. I am trying to make a point. Miranda warnings apply to an incriminating statement. This is how it could be like an incriminating statement. I'm not saying that his response was incriminating. I'm saying in the whole circumstance of what happened here, that what we were trying to understand is whether the Miranda warnings were efficacious as intended. Are they the kind of a warning? Is this the circumstance that we feel we can rely and say we're giving this man or this woman a choice? You can talk or you can remain silent. That's what Siebert says the purpose of this analysis is. And what I submit is under the circumstances of the way the police treated Faust here, we don't have that conversation. What is the first statement that you want suppressed, and when did it occur? The statement that I want suppressed? The first statement I want suppressed, Your Honor, is... Yes, I will cooperate. No, is his confession after Miranda. And the reason for that... After Miranda. After Miranda. And the reason that I'm not asking for the pre-Miranda statements, of which there were a number, is at the hearing before we got to trial, the government agreed that they would not put in any of those statements. So any of the pre-Miranda statements, the government agreed to keep out. All right. Thank you.  Thank you. Mr. Crum, good morning. Good morning. May it please the Court, Randall Crum on behalf of the government. While I intend to mostly discuss the Johnson issue, I did want to respond to one question you raised, Judge Baird. My understanding is that this Court in United States v. Witte, its most recent statement, said that essentially it looks at both tests of the Siebert majority, the plurality and the concurrence, and essentially it will evaluate it under both to see. Presumably it potentially could be inadmissible if it failed either one, but they have not found one to be controlling. There was an early decision where they treated the concurrence as controlling earlier the same year, but Witte is the most recent, and they said that they have not determined one to be the controlling opinion. That was a case in which it passed both. Right. So what we don't know is whether if it flunks Souter but satisfies Kennedy. Right, right. We don't know the outcome, but at least the most recent statement of the Court was that it, or the approach has been to apply both. Your Honor is correct. We don't know what would happen if it made one and not the other. That hasn't occurred yet. In our view, obviously, it passes both. So I don't think that arises here. With respect to the Johnson issues, I think my brother noted briefly the question of law of the circuit, and I think in this case that looms particularly large because with respect to both issues, there are a consistent set of precedents that effectively decided the divisibility question with respect to both of these crimes. With respect to the ABPO looking at taking out the PO portion by talking about assault and battery, those precedents go back to Holloway, but they come forward as far as 2014 in Martinez, which reaffirmed the analysis that there are three forms under Massachusetts law, and the first form, a harmful battery, satisfies and qualifies under the law. I thought Martinez specifically said that it wasn't confronted with an argument that, despite the presentation in the statute, it wasn't divisible. Well, I'm not sure that it reaffirmed that that is the precedent. Your Honor is correct. I don't know that they were forced to decide it. But the question is – But Martinez seemed to treat it as if it was presented, it would be an open question. Otherwise, why would they have mentioned that? That's a good point. The point I was trying to make, though, I think more generally, is that this Court has made clear that law of the circuit generally prevails even against intervening precedent as long as it doesn't call into question – But the issue is just post-decamp. Right. We're supposed to try and figure out whether we have separate crimes or not. Right. And the determinant of that has got to be state law, right? Yes. And the determinant of that can't be just the face of the statute, as we look at it blind to how Massachusetts, in fact, treats that law, right? That's certainly the case. Okay. So we've just been trying to figure out, in fact, do we have separate crimes here or not, right? If we don't, then, as I understand the government's argument, there might be a problem because offensive touching is not enough. Right. In this brief, we do concede that with respect to both resisting arrest and ABPO, there are forms that would not qualify. Okay. So then the whole issue is just whether, as Massachusetts law stands today, they are divisible or they're not. Right. So what's the government's argument that they are? Well, I will address that question. But, again, I want to come back to the law of the circuit issue because I think it's important to understand how I think the government's position and how it works here. And that is, while the defendant certainly did cite to decamp below and cite to decamp in his opening brief, the issue was not the divisibility of the statutes in the way that he's arguing in his reply brief. That argument comes up for the first time in the reply brief, that they're not divisible under assault battery into the three forms that the court has recognized. They're not divisible under resisting arrest into the two forms that this court has long recognized. Those issues were open. I mean, decamp is not a new decision. Johnson is. Decamp's been around for a while. Those issues were open. So you're saying he's waived the argument? Yes, and that's why we didn't address it. Because suppose we read his brief as saying they're not divisible. We've got an overbroad crime here. The government comes back and says, actually, when you look at it, you're wrong about that. And then quite naturally in reply, he now responds specifically to the various government's contention. So the government was certainly fully on notice that there was a divisibility issue, which is why your brief goes through the issue, presumably, to which he then responds in reply. Although, again, in fairness to the brief, what we argue first is that it is controlled by law of the circuit. I understand that. But then the second point is that we go on and argue the merits of it. Because he raised the divisibility issue by treating them as all not divisible. Well, treating them as. But there's a difference between treating them as. Again, he cited the comp, and he said they don't satisfy it. But the only divisibility point he makes, you can search his brief for the words divisible, indivisible, or any variation thereof, the only mention he makes is a footnote where he says, with respect to the person, you know, ABPO versus ABCO, et cetera. So that's, again, just to preserve the point that in our view, this isn't really, wasn't squarely presented. In this case, it may be elsewhere. But as we do, again, it is our view that these are divisible statutes. And for the reasons that we cite, that the Massachusetts courts, I think Cologne is the most recent, you know, sort of clear case that sets out that they do, in fact, have three forms of assault and battery. It's cited in this brief as well as ours. It's the same case. But it does say that they have different elements and that the first form they find is, in fact, under the Massachusetts analog of the ACCA. It's, you know, it does, in fact, include as an element violent force.  I understand Your Honor's point with respect to my colleague's question about what the jury instructions are. I will admit that's not an issue that I can add anything to at this point. If you wanted to hear more about that, that's something, you know, we certainly could submit something supplemental. Well, just so, if we remand to figure out whether this was ABPO with, to find out what, was it a plea right here? Yes. If we're going to look at the documents, that will show us what he was convicted of. Yes. If it just says AB, you're convicted of AB, I guess it will say of a police officer. Right. I believe that is actually in the charging document. But nothing more. Right. That's all it says. What's the government's position? Is that a qualifying crime or not? Well, I guess if that's all it says, then I think that would be a problem to prove it under Shepard Approved Documents. So what do you need it to say in order for us to be able to conclude that there was a qualifying predicate offense here? I mean, I think it's the standard Taylor analysis, which is you look at charging documents and you look at the plea colloquy, and if either one makes it clear which form, you know, again, presuming the divisibility issue, because there's sort of, there's a divisibility as, and I think I agree with the view that that's a prior issue. You would like us to look at the plea colloquy, and if the plea colloquy showed that there was something more than offensive touching at issue, you'd say that's enough? I think we would. Yes or no? If it's clear, yes. Yes. Okay. So if that's right, that can only be true if, under Massachusetts law, that additional aggressive touching is a distinct element. Isn't that right? Absolutely. Okay. So what is the case law that tells us whether Massachusetts treats that as a distinct element? Well, that's Cologne. It's, again, the case with respect to assault and battery, and I believe their most recent statement. I think there's many cases. They were cited as far back as Holland. No, no, no. Those are just cases that show the array of things that can count. Right. For determining whether it's an element, I would have thought, as Justice Alito said in dissent and as the majority in the camp does not disagree, and as Poirot suggests, the issue, I would have thought, is whether there has to be jury unanimity, or I understand it's a tricky thing to do in a plea. I don't know what one would do. But since there are instances in which, even though there are different ways of committing it, it's not an element in the sense that the jurors don't have to agree on the way. The element is just the conjuries of them. Right. Well, if all that's true in the case of a plea, that would seem per se it's going to be overbroad. Even if the plea colloquy showed that he was saying it was harmful conduct, because that would just be a fact, and under de Camp, that's not enough. What matters is what the element is. Well, and I guess the question is whether there's anything in the colloquy beyond the description of the conduct. But the colloquy can't tell us what Massachusetts law says the element is. Right. Only the Supreme Court of Massachusetts can tell us that. No, that's right. So that's where I'm at. What in Massachusetts law tells me whether the nature of the touching is an element or not, as opposed to just that there was some touching which could go from light touching to really harmful touching. I understand. I guess I'm trying to draw a distinction, and I understand Your Honor, to be making as well between the elements in terms of what they are as a matter of law and the proof of the elements, on the other hand. And I guess in the government's view, the question of juror unanimity is in the second category and not the first, which is to say Cologne itself says that harmful battery includes as an element the use of violent force. That's the Massachusetts Appellate Court, but it's setting a long line of precedence that says the same thing. So they're saying it's an element. Now, if there's not juror unanimity in a given case, you'd have a hard time showing which one you got. And if there's not a charging document that says you're charged with a harmful form, you would have the same trouble. But it doesn't mean it's not an element. So it can be an element. But it doesn't have to be an element. It can be often one that's hard to demonstrate. So that means on the government's theory, the plea colloquy suggesting that it was violent force or a harmful battery would be relevant, even though if the jury had decided that without having been instructed, we might treat it in that instance as overbroad. Well, because it goes into how Shepard chose to define the universe of documents. And so, yeah, so our view is that it's an element, then you go to Shepard and you look at what you have, and it may be that some combination improves it and some combination doesn't, and you have it in some cases and you don't in others. And is that true for resisting arrest is one of the – Well, resisting arrest, in our view, this one does include alternative statutory elements. I know in the earlier argument there was a suggestion, and I can't rebut this, I'm not prepared to rebut this, that the instructions, the way they're actually given in Massachusetts courts, don't necessarily require a finding – But you're still a basis for saying that it's divisible. It's just a form of presentation on the face of the statute. And, again, the law of the circuit in this court repeatedly held that one qualifies under the force and the other under the residual, so it's treated it effectively as divisible for a long time under a series of cases. So that's our view that – But we don't have any Massachusetts law that tells us whether, in fact, Massachusetts treats it one way or another, right? Well, we do have – we do discuss cases showing – addressing the issue of violence, which was the primary issue with respect to resisting arrest was even the violent form. And this one, again, I just want to back up to reassert just so I'm not losing at the argument that there's the law of the circuit issue in a waiver in terms of the arguments actually raised in this case. On resisting arrest, his primary argument is that even looking at the violent form, it's not violent enough. So he's not really – wasn't really – the divisibility point wasn't really presented in that one at all, so much as to say that even if you just look at part one, it's not good enough. We disagree with that. We also think law of the circuit controls on that. But on the visibility issue, again, we think the Massachusetts case law does treat it separately. The elements of it are violent enough. We cite a case – I don't remember the name of it – that discusses the kind of force that's needed under the violent form. And, again, I acknowledge, because I know it's relevant to the questions you've been asking, that I don't have an answer to the question about how the instructions go in those cases in a general manner. So I can't say any more about that. If there aren't any other questions, we're happy for the other arguments. Thank you.